# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

JUSTEN ALAN FAGAN,

    Petitioner,

vs.

JOHN FAYRAM,

    Respondent.

No. C09-0136-LRR

ORDER

___

      This matter appears before the court on the petitioner's amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket no. 26). On April 16, 2012, the petitioner submitted his amended application for a writ of habeas corpus. He also submitted a brief in support of it and appendix (docket no. 27). On June 26, 2012, the respondent filed a response brief and an appendix (docket no. 30).[1] On August 3, 2012, the petitioner filed a supplemental appendix (docket no. 33) and a reply brief (docket no. 34). The court now turns to consider the petitioner's amended application for a writ of habeas corpus.

      The law that the court must apply is firmly established. Title 28, United States Code, section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

___

[1] The court notes that the respondent previously submitted relevant state court documents. Because they are part of the record, the court will rely on them to the extent that they are needed to resolve the petitioner's claims.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of legal error are governed by the first subparagraph while claims of factual error fall within the second subparagraph. *See id.* at 1029-30.

Pursuant to 28 U.S.C. § 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The Supreme Court's opinion in *Williams v. Taylor*, 529 U.S. 362 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners. *See Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001) (discussing the effect of *Williams*); *Siers v. Weber*, 259 F.3d 969, 972-73 (8th Cir. 2001) (same); *see also Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004) (stating only limited and deferential review of underlying state court decisions in habeas corpus cases is permitted).

Under *Williams*, a state-court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court

of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. at 412.

An "unreasonable application" of Supreme Court precedent can arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involving an unreasonable application of . . . clearly established federal law.'" *Id*. at 407-08. Notably, however,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*.

*Id*. at 411 (emphasis added).

So, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa court correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of the petitioner's claims. *See, e.g., Rousan v. Roper*, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing applicable standard); *Newman*, 247 F.3d at 850-52 (same); *Weaver v. Bowersox*, 241 F.3d 1024, 1029-30 (8th Cir. 2001)

3

(same); *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000) (same).

Further, "[c]laims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact."[2] *Weaver*, 241 F.3d at 1030. Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Weaver*, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings . . ."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

The petitioner seeks relief under 28 U.S.C. § 2254(d)(1) and 28 U.S.C. § 2254(d)(2). He contends that the Iowa courts' decisions regarding his ineffective assistance of counsel claim and Interstate Agreement on Detainers claim were contrary to, or involved an unreasonable application of, clearly established federal law. He further contends that, when deciding the ineffective assistance of counsel claim, the Iowa courts made an unreasonable determination of the facts in light of the evidence presented.

With respect to whether an evidentiary hearing is warranted, 28 U.S.C. § 2254(e)(2) provides:

---

[2] Title 28, United States Code, section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

4

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Due to the limits set forth in 28 U.S.C. § 2254(e)(2), the court concludes that an evidentiary hearing is not warranted. *See Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (discussing constraints on district court's discretion to hold an evidentiary hearing); *Hall v. Luebbers*, 296 F.3d 685, 700 (8th Cir. 2002) (discussing standard for conducting an evidentiary hearing under 28 U.S.C. § 2254(e)(2)); *Kinder v. Bowersox*, 272 F.3d 532, 542 (8th Cir. 2001) (finding it was proper for district court not to hold an evidentiary hearing because the petitioner did not meet the requirements of 28 U.S.C. § 2254(e)(2)); *Parker v. Kemna*, 260 F.3d 852, 854 (8th Cir. 2001) (same); *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001) (same); *cf. Johnston v. Luebbers*, 288 F.3d 1048, 1058-60 (8th Cir. 2002) (assuming that 28 U.S.C. § 2254(e)(2) did not bar the district court from granting an evidentiary hearing and denying the petitioner an evidentiary hearing because such a hearing would not assist in the resolution of his claim).

Concerning the merits of the petitioner's claims, the court thoroughly reviewed the record, which includes extensive briefing by both parties, and deems it appropriate to deny the amended application for a writ of habeas corpus for the reasons stated in the response

brief that the respondent filed. The response brief adequately sets forth the law that is applicable to the petitioner's claims. Specifically, the respondent correctly asserted that the petitioner is not entitled to habeas relief because the Iowa courts neither unreasonably adjudicated the petitioner's ineffective assistance of counsel claim nor unreasonably adjudicated the petitioner's Interstate Agreement on Detainers claim.

The court finds that neither of the petitioner's claims supports granting relief. It is clear that, under 28 U.S.C. § 2254(d)(1), a petitioner must prove the state court's decision is objectively unreasonable, rather than incorrect or erroneous. *Christian v. Dingle*, 577 F.3d 907, 911 (8th Cir. 2009) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (emphasizing that a state court's application of clearly established law must be objectively unreasonable); *Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001) (discussing effect of *Williams v. Taylor*, 529 U.S. 362 (2000)). The court concludes that the Iowa courts' analysis of the petitioner's ineffective assistance of counsel claim is not contrary to relevant precedent and it is not an objectively unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

In the interest of efficiency, the court deems it appropriate to summarize the initial August of 2007 ruling on the petitioner's application for post-conviction relief. The summary is as follows:

> The petitioner faced six charges—robbery in the first degree, eluding, burglary in the first degree, theft in the first degree, attempted escape and criminal mischief—as a result of conduct that occurred over nearly a year. An experienced and respected attorney represented the petitioner on those charges and unsuccessfully attempted to negotiate a comprehensive plea deal. After being convicted at trial of robbery in the first degree, the parties resolved other charges and the Iowa District Court for Iowa County imposed several sentences, including a mandatory term of twenty-five years for robbery in the first degree. At the time he went to trial on the robbery in the first degree charge, the petitioner still faced a five year sentence

6

that originated out of Illinois and several other charges in Iowa.

After the Iowa appellate courts resolved his direct appeal against him, the petitioner pursued a plethora of different claims and theories, including that his brother committed the robbery, before ultimately asserting that counsel provided erroneous information regarding the sentencing consequences of a plea offer.

Counsel's recollection of the events surrounding the plea offer differs from the petitioner's recollection of those same events. Counsel remembered that the petitioner was unwilling to accept a sentence that exceeded two years and that he would plead guilty to a charge if it included a five-year indeterminate sentence. The petitioner averred that he never stated to counsel that he only would accept a deal that resulted in a short one to two-year sentence. Counsel and the petitioner both acknowledged that the petitioner desired to be out of prison before his children's eighteenth birthdays. But, counsel understood such desire to mean that the petitioner wanted to be there for his children during their childhoods, and the petitioner maintained that he just wanted out of prison before his children turned eighteen.

Counsel conveyed the terms of the offer to the petitioner over the phone on the Thursday before the Monday the petitioner's trial was scheduled to commence. The petitioner rejected the offer, and counsel memorialized their conversation by faxing a letter to the petitioner. Counsel and the petitioner dispute what they discussed during their telephone call. On some level or another, counsel and the petitioner discussed several issues prior to rejecting the deal. Those issues include: the total sentence for robbery in the first degree, the total sentence for robbery in the second degree, the total sentence for burglary in the second degree, the total sentences for eluding and attempted escape, the mandatory minimum or percentage of time that the petitioner would be required to serve for robbery in the second degree, the petitioner's eligibility for parole after serving the required amount of time on the robbery in the second degree charge, the likelihood of serving less time under the deal, the petitioner's aversion to pleading guilty to any type

7

of burglary charge, the consecutive nature of the charges and the risks of conviction at trial. Ultimately, the petitioner decided to proceed to trial because he did not see a large difference between the sentence that he faced under the deal and the sentence for robbery in the first degree.

The Iowa District Court for Iowa County determined counsel's testimony to be a more credible version of the events because the faxed letter corroborated his testimony. It did not find that the petitioner proved his assertion that counsel misinformed him about how much time he would be required to serve if he entered a plea to burglary in the second degree. It noted that counsel did discuss the mandatory minimums for robbery in the first degree and robbery in the second degree, and it did not find counsel at fault for failing to discuss earned good time. In the end, the Iowa District Court for Iowa County found that the petitioner failed to convince it that he would have accepted the plea agreement if he had been properly advised, that is, failed to prove that he was prejudiced by any omission in the advice given by counsel regarding the plea offer. It stated:
> The credible evidence demonstrates that [Fagan's] rejection of the plea agreement was based on his requirement that he be released in time to enjoy his children before they turned 18. The good time calculation placed his discharge date at sixteen or so years, a period of time that was unacceptable to [Fagan]. Although [Fagan] now states that he would have accepted a sixteen-year discharge date, this contention appears to have been tailored to fit the facts of his case. The court finds that [Fagan's] testimony is not credible when he insists that he would have accepted the plea bargain if he had been advised about his potential discharge date.

On appeal, the Iowa Court of Appeals addressed the petitioner's assertion that counsel failed to adequately explain a plea offer because he did not discuss earned time statutes, he did not strongly encourage him to accept the terms offered by the county attorney and he did not correctly explain the mandatory sentence that the petitioner would
8

face if convicted of robbery in the second degree. It discussed the background and set forth several standards, including the standard that governed its review and the standard under *Strickland v. Washington*, 466 U.S. 668 (1984). Then, it examined whether the petitioner suffered any prejudice. Like the Iowa District Court for Iowa County, the Iowa Court of Appeals ultimately concluded that no Sixth Amendment violation occurred. Before so concluding, it stated the following:

> Fagan has not shown, by a preponderance of the evidence, that there is a *reasonable probability* that he would have accepted the plea offer had Stiefel not committed the alleged errors. Even if Stiefel explained how Fagan could "earn time," more strongly encouraged Fagan to accept the offer and correctly stated that the [robbery] conviction would require him to serve a mandatory minimum of 85% of the maximum indeterminate term, the evidence indicates a strong likelihood that Fagan still would have rejected the offer.
>
> The testimony consistently showed Fagan was well aware of the evidence against him and that a conviction following trial was highly probable. It indicated that, despite knowing this, Fagan did not want to plead guilty to any burglary charge. The letter written by Stiefel to Fagan documenting why Fagan was rejecting the offer also stated "you want out of prison before your children are age 18." The testimony indicated Fagan wanted to enjoy his children while they were still young. According to Fagan, under the agreement and if he accumulated the maximum amount of earned credit, his sentence could have been completed in sixteen years. At that point, his youngest child would have been seventeen.
>
> The evidence indicates Fagan opted to reject the plea offer because it was not as favorable as he wanted and he therefore chose to go to trial. Haven chosen to stand trial instead of accepting the plea offer, it is more difficult to see the harm any ill advice caused because the trial process ensured Fagan was protected by certain constitutional safeguards. . . . The district court found the credible evidence demonstrated Fagan rejected the plea offer based on its unfavorable terms rather than due to any failures of his counsel. The [district] court's

9

> describing Fagan's counsel as "respected" was part of this credibility determination and did not rise to the level of taking judicial notice of an adjudicative fact. The [district] court is free to make credibility determinations and, in our review, we give weight to its findings. . . . We agree with the district court and affirm its dismissal of the [post-conviction relief application].

In light of the State courts' resolution of the petitioner's ineffective assistance of counsel claim, the court is unable to conclude that there is anything objectively unreasonable about their decisions. They did not err when applying clearly established federal law. And, when deciding the prejudice prong of the ineffective assistance of counsel claim, the Iowa courts made a reasonable determination of the facts in light of the evidence presented. No clear and convincing evidence that the petitioner relied upon rebuts the presumption that the Iowa courts found the facts correctly.

Moreover, after reviewing the record de novo, *see Rompilla v. Beard*, 545 U.S. 374, 390 (2005), the court concludes that the conduct of counsel fell within a wide range of reasonable professional assistance, *Strickland*, 466 U.S. at 689, and counsel's performance did not prejudice the petitioner's defense, *id*. at 692-94. Considering all of the circumstances, the court finds that no violation of the petitioner's constitutional right to counsel occurred. All of the petitioner's assertions as to the plea offer are unavailing.

The petitioner blames counsel for failing to take more than seven minutes to explain in person every aspect of the State's proposal, which he characterizes as complicated. He condemns counsel for electing not to fully discuss the approximate amount of time that he might have to serve. The record, however, reveals that: (1) the petitioner faced multiple charges that spanned a large time frame; (2) counsel regularly interacted with the petitioner prior to trial; (3) in May of 2001, the county attorney only offered to recommend that the robbery in the first degree charge and eluding charge be run concurrently to each other and counsel conveyed to the petitioner that he could either go to trial or offer to plead guilty to robbery in the second degree and receive a sentence of 10 years without the possibility

of probation or parole; (4) two months later or in July of 2001, counsel faced several constraints and conveyed to the petitioner the terms of a plea deal offered by the State; (5) the petitioner faced at least 8.5 years and probably a lot more time because of other Iowa charges and Illinois convictions; (6) the petitioner expressed that he feared being charged with federal offenses;[3] (7) the petitioner had children, including a four-year old daughter that would be 13 if he served 8.5 years; (8) whether he served a minimum of 19 years for the robbery in the second degree charge and burglary in the second degree charge, served 17.5 years if he earned good time and did not get paroled or served some period of time between 8.5 years and 14 years because he received good time, got paroled and did not face additional time as a result of non-Iowa sentences, the petitioner had only a slight chance to be able to enjoy his children before they reached 18 years of age; (9) the petitioner returned to Illinois and served another year in prison for other convictions and had no reason to know whether he would be required to serve his Iowa sentences consecutively or concurrently to his Illinois sentences; (10) the petitioner asked the court in 2002 to reconsider his sentence so that he could be a part of the lives of his three children; (11) the petitioner maintained his innocence on direct appeal; and (12) the petitioner asserted during initial stages of his post-conviction relief proceeding or until discovery and an investigator suggested they were without merit that witnesses perjured themselves, that he did not commit the robbery and that counsel failed to have the gun fingerprinted, to point at another male suspect and to request proper jury instructions. In light of the record, the court finds that counsel did not offer woeful advice about the plea deal. The fact is the petitioner had limited options as a result of his own actions. Counsel and the petitioner proceeded as if they fully anticipated on going to trial because the State

---

[3] The pre-sentence investigation report and other parts of the record indicate that federal agencies participated in the investigation and encouraged at least one individual to cooperate. The record also indicates that the petitioner possessed several firearms and had prior convictions.

presented the petitioner with a deal that included a lengthy sentence. Even in light of the high probability of conviction, the petitioner unreasonably refused to accept that he would be required to serve a lengthy sentence. The petitioner's contention that all he really wanted was to get out of prison before his oldest child turned 18 is belied by the record and wholly self-serving. At a minimum, the petitioner knew that, by pleading guilty, he was resolving nearly all of the charges that he faced in Iowa and avoiding a twenty-five year sentence for robbery in the first degree. The fifteen-year reduction for agreeing to plead guilty to robbery in the second degree did not sway the petitioner at all. So, like the Iowa courts, the court concludes that the petitioner failed to establish that he suffered any prejudice as a result of counsel's actions.

Lastly, with respect to the ineffective assistance of counsel claim, the court concludes that, if it can be considered by the court, the "new evidence" relied on by the petitioner does not undermine the Iowa courts' resolution of the matter. The reference to 10 years is unexplained by counsel and could relate to counsel's May of 2001 suggestion to the petitioner that he could offer to plead to robbery in the second degree. Moreover, none of the additional facts relied on by the petitioner lead the court to conclude that the petitioner would have pleaded guilty if advised that pleading guilty was the only option that provided him with a small chance to be with his children while they were growing up.

Concerning the petitioner's claim that the imposition of a corrected sentence in 2011 violated the Interstate Agreement on Detainers, the record shows that the petitioner asked the Iowa District Court for Iowa County to order the Iowa Department of Corrections to give him credit as if he received a twenty-five year indeterminate sentence rather than a mandatory minimum sentence. The petitioner complained because he believed that the Iowa Department of Corrections was impermissibly forcing him to serve a mandatory minimum sentence. He faulted the Iowa District Court for Iowa County for failing to impose a determinate sentence under Iowa Code section 902.12 and for failing to advise him that he had to serve at least 85% of that term. The petitioner argued that his sentence

violated the federal principle of finality as set forth in *Greenlaw v. United States*, 554 U.S. 237, 247-49 (2008) (holding that a court cannot increase a defendant's sentence absent an appeal from an illegal sentence), and he argued that it violated the Interstate Agreement on Detainers, which requires a case against a defendant who falls under the Interstate Agreement on Detainers to be final before he or she is returned to the sending state. In support of the latter argument, the petitioner relied on *Bozeman v. Alabama*, 533 U.S. 146 (2001).

The court concludes that the law and the facts that the petitioner rely on do not justify relief. The petitioner is unable to rely on the Interstate Agreement on Detainers as a basis to grant him habeas corpus relief. The petitioner advocates a reading of the Interstate Agreement on Detainers that is too broad. The Interstate Agreement on Detainers does not limit the manner by which Iowa courts apply Iowa law. And, the Interstate Agreement on Detainers only requires that a person be tried before being returned to the sending state. That occurred here and the petitioner did not face any uncertainty with respect to the resolution of the Iowa charges. Indeed, the petitioner went to trial and the Iowa District Court for Iowa County sentenced him before he was returned to Illinois. The petitioner's suggestion that all aspects of the case must be final is unsupported by any clearly established federal law. The later correction of the petitioner's sentence pursuant to a rule of criminal procedure that applies in Iowa appears to the court to be no different than an appellate court deciding a case in a manner that requires a lower court to resentence a defendant after such individual has been returned to a sending state. The petitioner's expansive reading of the Interstate Agreement on Detainers would permit dismissal if the Iowa Court of Appeals or the Iowa Supreme Court has not fully resolved his appellate claims before he is returned back to the sending state. This is not the law, and, therefore, the court declines to adopt the petitioner's application of the Interstate Agreement on Detainers.

Additionally, the court notes that the record reflects that, until 2009, the parties always operated as if the Iowa District Court for Iowa County imposed a mandatorily required sentence for the robbery in the first degree conviction. The pre-trial discussions with counsel, the faxed letter, the pre-sentence investigation report, the sentencing transcript, the judgment and sentence, the motion to reconsider sentence, the response to the motion to reconsider sentence and the Iowa District Court for Iowa County's ruling on the first post-conviction relief application all indicate the same understanding. Apparently, the parties reached such understanding because they both agreed that a mandatory minimum sentence applied and relied on the fact that, after the State sought clarification at the time of sentencing, the Iowa District Court for Iowa County indicated that the petitioner would be required to serve whatever time is required by the statutes of the State of Iowa for the robbery in the first degree conviction. So, the petitioner would be hard-pressed to assert that the upward revision of his sentence, made to correct a mistake by the sentencing judge eight years earlier, is so unfair that it must be deemed inconsistent with fundamental notions of fairness.

Further, the court notes that the posture of this case is different than the posture of *Greenlaw* because in *Greenlaw* the government argued for a mandatory minimum, the district court rejected the government's argument, the district court imposed a lower sentence than authorized by law and the government did not appeal. Here, the parties presented their sides, and the State of Iowa never had to appeal because no party claimed that the required minimum did not apply and the Iowa District Court for Iowa County purported to agree with the parties. Consequently, at no time did the State ever get prompted to move to correct the sentence through a judicial proceeding or to appeal an adverse decision. Additionally, in *Greenlaw*, the Supreme Court addressed only the federal cross-appeal requirement; it did not address the State of Iowa's ability to correct at any time an illegal sentence under Iowa Rule of Criminal Procedure 2.24(5)(a).

The petitioner concedes that the Iowa Rule of Criminal Procedure 2.24(5)(a) lawfully permits a court to increase or decrease an illegal sentence at any time but argues that, because the State secured his presence and tried him pursuant to the Interstate Agreement on Detainers, he is permitted to rely on federal law that otherwise would not apply to him. He believes that the Supreme Court's announcement in *Greenlaw* that a federal appellate court may not increase a sentence to a mandatory minimum absent an appeal by the government also prevents the State from ever asserting that the petitioner received an illegal sentence. The position advanced by the petitioner is not convincing. When deciding *Greenlaw*, the Supreme Court did not address the Interstate Agreement on Detainers. Rather, it addressed federal procedural law and did not address in any manner whether a State court could correct a sentence pursuant to its rules. Since deciding *Greenlaw*, the Supreme Court has not extended its holding to defendants who were tried under the Interstate Agreement on Detainers and it has not addressed whether a State court can rely on its own rules to correct an illegal sentence.

Moreover, the Supreme Court did not undermine its prior determination that a court may always correct a technically improper sentence. In *Bozza v. United States*, 330 U.S. 160 (1947), the Supreme Court expressed its "reject[ion of] the 'doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence.'" *Id*. at 166 (quoting *In re Bonner*, 151 U.S. 242, 260 (1894)). It explained that:

> The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case, the court only set aside what it had no authority to do, and substituted directions required by the law to be done upon the conviction of the offender. It did not twice put petitioner in jeopardy for the same offense. The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

15

Id. at 166-67; *see also Blankenship v. Parratt*, 554 F.2d 850, 851-52 (8th Cir. 1977) (holding that there is no constitutional prohibition to resentencing for correction of an invalid sentence even though the punishment imposed upon correction is more severe than the original sentence). So, under *Bozza*, a court must alter a statutorily-invalid sentence in a way that increases the severity of the sentence if the statute so provides. This remains the law, and the court is unable to conclude that *Greenlaw* limited the power of the Iowa courts to apply its rules to correct an illegal sentence. The court does not find that the petitioner had a legitimate expectation of finality in an indeterminate sentence of twenty-five years because he always knew that the Iowa District Court for Iowa County lacked the statutory authority to impose a subminimum sentence in the first instance. Indeed, throughout all of his post-conviction relief proceedings, the petitioner consistently maintained that he would be required to serve a mandatory amount of time with respect to the robbery in the first degree conviction.

In sum, the court concludes that the Iowa courts' adjudication of the petitioner's claims neither resulted in a decision contrary to clearly established federal law nor involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d). Further, consistent with *Reed v. Farley*, 512 U.S. 339, 348 (1994), the court concludes that no fundamental defect which inherently results in a complete miscarriage of justice occurred. An unwitting judicial slip is not a valid basis to grant habeas relief. *Id*. at 349. The Iowa courts reasonably decided the petitioner's claims and did not unreasonably refuse to extend federal law. Accordingly, the petitioner's amended application for a writ of habeas corpus shall be denied.[4]

---

[4] As the briefing in this case establishes, the procedural history surrounding both of the petitioner's claims is protracted and somewhat convoluted. Just recently, the Iowa Court of Appeals resolved an appeal from the denial of a second post-conviction relief application, *see Fagan v. State*, 10-0739, 2012 Iowa App. LEXIS 729 (Iowa Ct. App. Sept. 6, 2012), and an appeal from resentencing, *see State v. Fagan*, 11-1659, 2012 Iowa

(continued…)

In a habeas proceeding before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if a petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

---

⁴(…continued)
App. LEXIS 743 (Iowa Ct. App. Sept. 6, 2012). Rather than address the procedural irregularities, the court opted to address the merits of the petitioner's claims.

17

find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the petitioner failed to make the requisite "substantial showing" with respect to the claims that he raised in his amended application for a writ of habeas corpus. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253.

If the petitioner desires further review of his claims, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

**IT IS THEREFORE ORDERED**:

1) The petitioner's amended application for a writ of habeas corpus (docket no. 26) is denied.
2) A certificate of appealability is denied.

**DATED** this 25th day of September, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA